TODD'S HEIRS
*vs.*
TODD'S HEIRS.

---

Case 24.

PET. EQ.

## Todd's Heirs and Administrator *vs.* Todd's Heirs.

APPEAL FROM FAYETTE CIRCUIT.

1. The ancestor sold land the inheritance of the wife, she uniting in the deed, but her acknowledgement being ineffectual to pass the inheritance, after her death the children of the wife sued for the land, but failing to recover, on the ground that they had received estate of the father by descent equal to the value of the land. This suit is brought against the administrator of the father and his children by a second wife to recover the value of the land. Held, that the plaintiffs had a right to recover the value of the land sold by their father out of his entire estate, with interest from the death of the father.

2. But if the value of the land sold, or part thereof, was used by the father in increasing the value of other lands which had descended to the plaintiffs, whereby they received the benefit of the proceeds of the land sold by the father, such outlay should be credited on the demand.

[The facts of the case are stated in the opinion of the court.] REP.

*Tho. A. Marshall* for appellants—

The judgment in this case is not only erroneous to the prejudice of Todd's estate, in some of its details, but is wholly erroneous in its principles—*First.* Because the estate is not liable to any extent on account of the failure of the plaintiff to recover the land, the title to which had descended to them from their mother. *Secondly.* If liable to any extent, the estate cannot be liable beyond the sum received and interest thereon from the time of the death of Robert S. Todd, and this liability has been fully satisfied by the value of the improvements placed by him upon a lot in the city of Lexington, and which came to them in right of their mother, without any charge for the improvements in that division.

To what ever extent R. S. Todd converted the lands of his wife into money, he converted it not for or to his own use, but for the use of his wife and her children; having in fact yielded to her children in part a use of the property in which the proceeds of the land were invested, which he would have been entitled to in the land itself if retained, and to which he was entitled in the property into which it was converted; and if it be said that he received money for the fee simple estate of his wife, which should have descended to her children, still, as his alienation of the land did not carry the title beyond his own life, and as the right of his wife, if she had survived, would have been as valid after his death as if she had made no deed, and as his right descended to her children unaffected except during his life by his alienation, even with warranty, (for if this had been, all the plaintiffs' doubtless would have recovered the land in the action brought for that purpose,) it is clear that the failure to recover the land was not the effect of his sale and conveyance; that although he received the entire price of the title in fee, he did not pass that title, nor impair any right either of his wife, or of her heirs in it, by his attempted transfer of it; and that his receiving the price of the fee simple,

and attempting or professing to convey that title, however injurious those acts may have been to his alienee, did not injure the wife or her children in their relation to the land, or the title to it, and certainly his appropriating the entire price to their use was not an injury to them; nor did it enter at all into the cause or causes of their failure to recover the land.

What then is the injurious act, which being brought home to R. S. Todd, is to make his estate liable to these plaintiffs for the land which they failed to recover upon a valid title, unimpaired by his alienation? If the wrongful alienation of a title, which he had no right to alien, had been attempted by him, it would, under the statute, have been utterly ineffectual, and could have worked no wrong; but it is apparent, on the face of the deeds themselves, that he did not assume the right, by his sole act, to dispose of the fee in this land. The deeds are in the name of himself and his wife; are signed and acknowledged by both before the proper officer, and evidently are ineffectual as to the wife, by reason of the mistake of the officer taking the acknowledgement, as to the nature of his title, and the purpose of the deed. The evidence in the record leaves no room to suppose that she was ignorant that it was her land that was sold, and was intended to be conveyed by the deeds. It may therefore be assumed that the acts of Todd, in selling and conveying the land, which in point of law could not work any injury, were not even intentionally wrong, nor done under any wrongful assumption of ownership, or of right to convey the fee. The sale was fairly made with the concurrence of Mrs. Todd and her friends. The proceeds were fairly appropriated for the benefit of herself and her children, and it was undoubtedly supposed that the deeds were effectual to convey the title in fee; but, as suggested, the deed was not effectual for that purpose. Why then did not the heirs of Mrs. Todd recover the land itself? And why are

they seeking indemnity for this alledged loss from the estate of their father?   Even if their father had pocketed the price which he received for the land, and had devised his whole estate to others, it would not have been at their option, upon his death, to determine whether they would recover the land or hold his estate liable for its enhanced value at that time. Under the provisions of the statute of 1798, (*Stat. law*, 110,) the land, if their mother's title was good, would have been theirs absolutely, and their title perfect against their father's alienees, would, by the possession under his deed, have been strengthened as against all others.  They could have no claim against their father's estate founded on the mere fact of his having aliened the land, because the alienation being wholly ineffectual, and entirely harmless, their remedy would have been against the land alone, unless by ratifying the sale, or by acquiring some right to enforce the warranty for their own benefit, they might have become entitled to claim the sum received by their father on the sale.   Certainly, with a perfect right to the land itself, and a complete remedy for its recovery, they could have no right to demand its enhanced value from his estate; and as in this case they have actually received the full benefit of the sale as made, they are confined to their remedy against the land.

But they have tried that remedy and failed by force of the statute, which enacts that if the alienor, without title, warrants against himself and his heirs, his heirs shall be barred from the same land to the extent of any heritage descended to them from the warranting ancestor; and these plaintiff's were barred because they had received estate by descent from their father of greater value than the land sought to be recovered.  At the death of their father they received of his estate a heritage equivalent or more than equivalent, to the value of the land, and therefore, and by that fact only, the warranty of their father precluded them from recovering the land.   If

no heritage had come to them from their father, they would unquestionably have recovered the land; but having failed to recover the land against the warranty, because he had provided a heritage for them equivalent in value, and had allowed it to descend to them, they turn upon his estate and demand a second payment for the same land. It is true that the heritage without the warranty would not, any more than the warranty without the heritage, have barred them, but the heritage is evidently the efficient cause of the bar, which operates, not as a matter of course to the extent of the warranty, which may be merely formal, but only to the extent of the heritage which is substantial, and is manifestly regarded by the statute as a compensation or consideration, without receiving which the heirs would not be bound by this collateral warranty. By the joint operation of this statute and the statute of descents, the acquiescence of the heirs in the transfer of the title is in effect purchased by the assets of the warranting ancestor; and what the same ancestor might, with the same assets, have effecte d, either by contract or by a provision of his will, had it been deemed necessary, is in accordance with his presumed intention, and with his tacit consent effected by these statutes, one of which distributes the assets of every decedent, and the other provides that the assets received by any of the heirs from the warranting ancestor shall operate, *pro tanto*, to quiet the adverse title of the recipient in and to the lands warranted.

The statute of 1798 applies to or operates upon a state of fact which may arise under the operation of the statute of descents; but each statute operates independently of the other; and although by the concurrent operation of the two the warranty of the ancestor becomes, in effect, a release of title by the heir for the benefit of the ancestor's estate; this fact or implied transaction being wholy unnoticed and unprovided for in the statute of descents cannot effect the course of descents, or the rule of distribu-

tion; and whatever claim, if any, may arise in favor of the heir or heirs, whose title is thus coercively barred or released, by the law, cannot possibly go beyond the real equity of the case, as demonstrated by all the circumstances by which it is characterised.

R. S. Todd had a perfect right to prescribe the disposition to be made of his estate after his death, or to leave it to the disposition of the law. He left it to the disposition of the law, which he therefore has adopted as his will, which says that his whole estate shall be subject to his debts, and that his representatives shall take only the residue, his wife and children taking their prescribed portions, and this is his will. The law says that the portions thus received by any of his children shall operate, *pro tanto*, as a satisfaction of their title against which he has warranted, and shall, *pro tanto*, bar a recovery by them against his warranty; and this also is his will, since it is the condition under which the estate is given to them by the law to which its disposition had been referred.

Suppose R. S. Todd had made a written will, by which it had been provided that after payment of his debts, and subject to the rights of his wife, he had given his estate equally to his fourteen children, on condition that his children of his first marriage, before receiving their parts, should release their title to the lands of their mother, which he had sold, or on condition that their acceptance of their portions should be a satisfaction of their claim to the land. This is precisely the condition which the law annexes to the descent on which R. S. Todd allowed his estate to descend, and it is impossible to conceive that the condition and rights of the plaintiffs are better, under the condition annexed by law to the descent, than it would have been under the same condition annexed to the acceptance of the supposed devise. The difference between the cases is, that under the will the plaintiff would have had the option of taking the portion in satisfaction of the land, while

in the absence of a will the law casts their portions upon them, and compels their acceptance as a satisfaction, *pro tanto*, of their claim to the land. In either case the certain and conclusive consequence is that their loss of the land is fully compensated by an equivalent received from the estate of the warrenting ancestor; whence it follows, that if the circumstances indicate any claim on their part against their father's estate, it is a claim not founded on the loss of the land, nor to be measured by its enhanced value, for all which satisfaction has been made; but their claim, if any, must be founded upon the fact, that their father, or his estate, has received a benefit from the sale of the land, and that by making their equal portions as heirs operate as a satisfaction of their claim to the land they are paid for it, not altogether out of assets properly belonging to the estate, but in part at least, out of assets produced by their own lands.

*M. C. Johnson* on the same side—

The defendants contend that the decree is erroneous from end to end; that the sale and conveyance of the land imposed no liability on R. S. Todd's estate; that if any was imposed, it was merely for the purchase money he received, and that this should be credited and extinguished by the expenditure of a larger sum on his wife's property, of which the complainants received the benefit, and that Edwards and wife should be charged with the value of the land conveyed to their daughter, and Levi O. Todd charged with at least $2,500, for advancements.

I have never been able to see upon what grounds the liability of R. S. Todd's estate can be sustained. The mere sale and conveyance by R. S. Todd can create no liability because—1st. It was not complainant's land, but his wife's land, when he sold and conveyed; and 2d. This sale and conveyance only passed his estate in the land, and not theirs. The statute barred them from recovering the land, not by reason of R S. Todd's sale, conveyance and warranty of

the land, but by reason of their being already compensated for the land warranted, by estate which had descended from Robert S. Todd to them. If, then, there is any liability in this case, it arises from the fact that the complainants have already been compensated for the loss or injury on account of which the loss or injury arose. How this can be manufactured into a liability I am wholly at a loss to see.

The only shadow of claim that I can see, arises in this manner, that they have compensated the purchaser of the land for his warranty, and are equitably entitled to stand in the place of the purchaser upon his warranty against the estate. If a part of the heirs pay off or discharge a liability of the ancestor, they are entitled to enforce that liability against the whole estate, so that each heir or distributee will bear his proper share of the burthen. The difficulty of working out the liability on this ground is, that no liability ever arose on the warranty. There never was a breach of the warranty, for there never was an eviction. There consequently could not be a legal liability; but if it were conceded that in equity this should be considered as a broken covenant of warranty, which the complainants had satisfied, and they were therefore equitably entitled to treat it as a broken covenant, what is the extent of the liability ? Robert S. Todd, upon that warranty, was only bound for the purchase money with interest from the time of his death. If the purchasers had been evicted, that was the utmost extent that could be recovered of R. S. Todd's estate; the difference between that price and the value of the land at the time of eviction would have been the purchaser's loss, not the loss of R. S. Todd's estate. The statute of wrongful alienations, which bars the heir from recovering the land his ancestor has warranted, where an equal value in assets descended has been received, throws this loss upon the heir instead of the purchaser. But upon what principle would the liability of the estate of R. S. Todd be increased by the mere equitable

transfer of the warranty from the purchaser to the heir ?   Has not a *bona fide* purchaser as good a right, legal and equitable, to be compensated for the loss arising from the difference between the purchase money and the value of the land he lost as the heir? In morals and in honor, the purchaser stands in the more favored position, and this statute, which throws this loss on the heir instead of the purchaser, shows that in law also the purchaser occupies the more favored position.   If then, as between the vendor and the purchaser, the purchaser must sustain this loss, and as between the purchaser and the heir with assets by descent claiming the land, the heir must sustain the loss, unless by some ingenious argument similar in its consequences to those ingenious contrivances in physics, by which the impossibility of the stream rising higher than its fountain head, have been attempted, the heir, with assets by descent, holding a lower position than the *bona fide* purchaser from his ancestor, cannot, by equitable substitution to the rights of the purchaser, occupy a higher position than the purchaser against the vendor on the warranty.   If then, it be conceded that by some process of substitution, and equitable breach of warranty, a claim can be worked out on behalf of the heir against the estate of his ancestor, the utmost extent of that equitable claim would be the purchase money, with interest from the time of the equitable or implied breach of warranty, which was the death of R. S. Todd.   But even this much is not conceded. It will be admitted that no precedent or authority can be found for such a claim.   It stands alone.   If well founded, such claims would certainly have been asserted at some period.   In England, from which we derive our principles of law and equity, there were frequent cases of the heir being barred by the warranty of his ancestor.   Can even a hint be found in all the books, that the heir is entitled, by substitution or implied breach of warranty, or any other manner, to compensation out of the personal estate which is

first liable for the pecuniary demands against the ancestor? In England the personal estate does not pass to the heir, but to the next of kin. If the principle on which this claim is founded be correct, the heir in England would have had the same claim against his ancestor's personal estate, and we know there were frequent occasions for the assertion of the claim in that country, from the much stronger effect of the conveyance and warranty of the ancestor in that country than in this.

If a father sells the property of his children and receives the money, in law and equity he will be considered as selling it as their agent, trustee, or guardian, and will be indebted to them for the proceeds and interest. But this was not his children's property when R. S. Todd sold and conveyed it. It was the property of his wife—his children, even if then in being, had not a shadow of claim to it. It is plain that Todd considered the conveyance a rightful conveyance, and that the purchase money vested in him, and that he remained of that opinion to his death. It is also plain that he appropriated the whole amount, and more, to the improvement of his wife's property, and that his estate, as distinguished from that of his first wife, derived no benefit from the sale. It is also plain that he had full power, by his dominion over his estate, and by the amount of that estate, to compel his first children to ratify all his acts, and merely receive their equal share of his estate. His acts and conduct negatived any claim of his children to this land aliened by him, or its proceeds. The very principle upon which the warranty of the ancestor, with assets descended, barred the heir, was that the heir, when he takes by descent from the ancestor, shall, to the extent that he received assets, abide by and confirm the acts of that ancestor in regard to the estate of the heir. It is carrying out by law, what is frequently carried out in equity, by the familiar doctrine of election. When then the appeal is made to the court of equity, in the absence of all legal claim,

by an heir with estate descended to him, to be indemnified for the loss produced by the warranty of his ancestor, for which in law he is already compensated by the estate he has received, he should be told that he must abide by the acts of his ancestor, that in law the warranty being equally effective as a will, deprives him of the estate aliened, and limits his share in his ancestor's estate to the share given to him by the statute of descents, that in equity it will be considered that the ancestor intended these legal effects of his acts. That the ancestor having full power, by reason of the amount of his estate, to execute all his purposes, and confirm all his acts, by will, and the law having, without will, confirmed those acts, equity will not, against the ancestor's wish and purpose, vary or thwart those legal consequences of his purposes and acts.

If, however, the liability is limited to the purchase money, then there is no claim, for these children have received full compensation in the improvements R. S. Todd has put upon their property, and of which they have received the benefit.

I will say a few words in regard to the advancements. It is manifest that Edwards and wife should be charged with the value of the land conveyed to his daughter; according to the statements in the answer of Edwards it was, to all substantial intents, an advance to him.

In regard to Levi O. Todd. I think it clear that he should be charged with all the sums which he admits his father paid for him, and which he says he paid back to him. This allegation of payment is clearly matter of avoidance, and should be proved by him—these amount to $1,685. It is also proved by Payne that he paid the rent for five years, of the house on Short street, to Levi O. Todd, by the order of his father. They were all paid to Levi except one payment of a quarter's rent. This was continued about five years, at $250 per year, say $1,000, making in all some $2,500 with which he is chargeable. Although

the lease to Payne is made by R. S. Todd, yet the rent is payable to "*bearer*," and the direction was to pay it to Levi. Levi's answer, that R. S. Todd received it by himself or "*agent*," is manifestly evasive. He don't admit that he received a dollar, yet it is shown that he received every dollar of rent for five years, with the exception of a single quarter paid to W. R. Rainey. Mrs. Breck proves that Robert S. Todd gave up this house and lot to his first children, in his lifetime, and they received the rent of it. The evidence of Payne and Mrs. Breck overturn Levi's answer on this subject. The intention no doubt was that Levi should receive the rent and distribute it, but he kept it all to himself.

Mr. Kinkead's brief, which I have just read, does not place this claim on the footing of a claim against the estate of R. S. Todd, but a claim of contribution from the co-heirs, and he assumes that other heirs are trying to be substituted to the rights of the purchaser from Todd. I don't know that I fairly understand him, but I set up no claim on behalf of my clients to be substituted to the rights of the purchaser, but only contend that the only possible foundation of complainant's claim is an equitable substitution of them (not my clients,) to the rights of the purchaser. If Mr. Kinkead does not set up a claim against R. S. Todd's estate he repudiates his suit, and repudiates the decree. The suit is against the estate; the decree is against the estate in the hands of the administrator, not against the heirs for contribution.

The court will see that Mr. Kinkead's illustration of this case, by the laws relative to the conversion of personal estate, is wholly inapplicable. There was no conversion of their property; he did not sell *their* property; his sale passed nothing but his right, which of course he could, without committing any tort or conversion, sell as he thought proper. His warranty only effected other rights than his own, when, by estate descended, he compensated therefor.

Mr. Kinkead refers to the case of *Logan vs. Moore*, 1 *Dana*, 57, as fortifying his case; we rely on it for the opposite purpose. In that case James Logan, who was entitled to a tract of land which his father, David Logan, had sold and warranted, was sought to be barred of the whole tract because land had descended to him and *his five co-heirs* of the value of the land he sued for. The court, however, decided that he should only be barred to the value of *one-sixth* of the land—that being his share of the estate descended. Now, if Mr. Kinkead's views are correct, this was an erroneous decision. For as soon as he was barred to the value of one-sixth, he immediately became entitled to a sixth of the remainder of the land, and thereupon he could be barred of recovery to the value of this sixth, and therefore he would be entitled to another sixth of what remains, until the whole of the land descended was consumed, which is exactly what is decided should not be done. The court in that case say, that one of the objects of the statute was to prevent the ancestor from depriving the heir of his inheritance, without transmitting to him an *"equivalent,"* and it is decided the only equivalent he received was one-sixth of the estate descended. There is no suggestion that he is entitled to any *indemnity* for being barred to the value of that sixth. Where it speaks of his being entitled to indemnity from his co-heirs, it is only upon the hypothetical case that he had been barred beyond the value of the sixth which descended; if that had been permitted he of course would have been entitled, against his co-heirs, to recover of the land descended the value of the land of which he was barred over and above the sixth which descended to him. But the court decides that no bar would exist above the value of the sixth descended to him, and no indemnity would be due to him.

Mr. Kinkead endeavors to place his claim on the ground of *contribution* among co-heirs. The only ground of contribution, in any case, is a joint liability. If a person suffers a loss, which does not arise

from a joint liability, I am unable to see how he can be entitled to contribution from any one. To establish a right of contribution it is essential to show a joint liability of all the heirs. The only pretense of such liability is upon the warranty of Robert S. Todd to the purchasers of the land. The truth is, there never was a liability on that, for it has never been broken; but the implied or equitable breach is the only shadow of ground of joint liability. Their liability as heirs on this warranty was only for the purchase money, yet Kinkead contends, that under the guise or name of merely *contributing* to discharge this liability, the heirs must pay it three times over in value. Contribution does not mean payment of the *whole* but of *part only*. Under the pretense of paying part the court is asked to compel the heirs to pay the whole liability four fold.

I would add, that on the subject of the advancements made by R. S. Todd, that he laid out for them each $400 in land in Illinois. But while they admit this fact they state that at the time the actual conveyance was made to them the land had fallen in price so as only to be worth some $225. Even if this were so, I would not admit that they should be charged less than the sum laid out for them, and no doubt with their approbation, but there is no proof whatever that there was any such depreciation, and to my mind such depreciation of Illinois land is extremely improbable.

*G. B. Kinkead*, for appellees—

1. On behalf of the four daughters of R. S. Todd by his first wife, and their husbands, I insist that the view taken by the circuit judge is correct, and that the value of the land at the time the right to the possession of it accrued to the plaintiffs is the measure of the claim for compensation from the estate of their father, and that any other rule would operate to the great injury of those whose land had thus been sold. Among children, if any where in the world, the max-

im "that equality is equity" ought to find a place, and if these children were all the issue of one marriage the maxim would be applied in its full force. Neither of these first children would be allowed, by a court of equity, to throw an unequal loss on the others, in a case of this sort. Why should their half brothers and sisters be allowed to do so? Why should they be allowed to throw a loss on the first children, arising from a wrongful act of their common ancestor? What rule of equality is it that does not distribute equally among the common family a damage done by the father to one of that family?

2. In the case of *Moore vs. Logan*, 1 *Dana*, 59, this court expressly recognizes the principal for which I am contending. The attempt there was to make one child bear the entire burden of the warranty, which the court refused to do, saying that possibly he might not be able to get indemnity from the other heirs, and that he ought to be made to bear only his own loss, in other words, that the whole estate was bound, and each heir for his share. I beg the attention of the court to this case as the only one in which the principles of this statute are applied, and working them out in reference to the case under consideration, we are brought to the conclusions I am insisting on.

The words of the statute of 1798, are: "§ 2. But 'if the deed of the alienor doth mention that he and 'his heirs be bound to warranty, and if any heritage 'descend to the demandant on the side of the alien- 'or, then he shall be barred for the value of the her- 'itage that is to him descended." (*Morehead & Brown's Digest*, 1 *vol.* 110.)

3. This suit is in the nature of an action against R. S. Todd's estate, for damage done by him in his life time to the plaintiffs. He has wrongfully sold their property. The statute protects his vendee and prevents the plaintiffs from recovering the property itself. It is made for the protection of the purchas-

er, and for no one else. To the extent of this statute, then, we are barred, and whatever may be the wisdom or justice of the statute we cannot fight against it. But the equity claimed here is out side and independent of the statute, though it is occasioned by it. So far as the purchaser is concerned we have no cause of action or complaint. For reasons no doubt satisfactory to them the legislature did not intend to allow an heir to interrupt the possession of a purchaser, who had the ancestor's warranty. But the co-heirs are not thus protected. Their liabilities to each other exist as fully as though the statute for the protection of the purchaser had never existed. They cannot, by force of the statute, identify or connect himself in any way whatever with the purchaser, or be substituted for him. The ancestor has done the plaintiffs a wrong, but a wrong which, as against the purchaser, they have no remedy for, by reason of the statute, and by reason of the statute alone. Take away the statute and the rights of plaintiffs against the purchaser are complete; allow the statute and no one is benefitted by it but the purchaser; the co-heir can claim no benefit from it. He can't say, "the statute protects the purchaser, and therefor I am protected by it." Nor can he say, "that but for the statute all that the estate of R. S. Todd would be responsible for, to the purchaser, would be the purchase money and interest, and the rent of the land would be equal to the interest, and therefore all that I can be answerable for is my share of the purchase money and interest." He has no right to say this, and thus make a rule of law which is applicable to one class of persons, to-wit, vendors and purchasers, applicable to a different class of persons, to-wit, co-heirs. Particular reasons have established a set of rules for the first which have no place with the second.

4. But even the statute itself forbids this sort of analogy. It does not provide that the heir cannot recover, if he has received assets to the extent of

the purchase money and interest, but to the value of the property sought to be recovered, showing most manifestly that it is not the amount covered by the warranty in case suit had to be brought on it, but the damage suffered by the heir, that the legislature had in contemplation. If the heir had received assets to the value of the land sought to be recovered,—i. e., the value when he brought his suit—he was not allowed to recover any thing from the purchaser. But suppose he had received from the ancestor an amount equal to the purchase money, would the statute bar his action? Most unquestionably not, except to the extent of that much in the then value of the land. If the purchase money were $100, and there was one hundred acres, and when the heir comes to sue the land was worth $100 an acre, and there were $100 of assets descended, the heir would be barred to the extent of one acre and no more.

This all seems to me clear. So that even if the heir puts himself in the shoes of the purchaser, it does not profit him anything. He is still liable for his share of the value of the land at the time the suit is rightfully brought, and not for his share of the purchase money.

5. Suppose an action could be brought against R. S. Todd for wrongfully selling this land, the measure of damages to be recovered by plaintiffs would be, not what Todd got for it, but what was the value of it when the suit was brought, or at any rate when the right of action accrued. This is in the nature of a suit of that sort. It is brought to hold his estate responsible for a damage done by him in his life time, and the true question is, what is the measure of damage plaintiffs are entitled to recover? Defendants say the purchase money; I say the value of the land when the right of action accrued, or when the suit was brought. No doubt the latter is the rule in regard to personalty. If a man sells my horse, which he has a temporary right to, for half price, I am not bound to take the half price from him when

the temporary right has expired. I am entitled to my horse, and if, by reason of any law, the purchaser is protected in keeping him from me, I have an action against the man who has thus sold my property, and I can recover the full value of the property when my suit was brought or my right of action accrued. The same just rule should apply in this case, and R. S. Todd's estate should be held responsible for the value of the land at the time suit was brought, and any other rule would work great hardship on the plaintiffs.

6. The damage done to plaintiffs by R. S. Todd is $8,000. It is proposed to compensate them by giving them $2,200 or thereabouts—the purchase money received by him. Suppose he had sold the whole tract for one hundred dollars, could we have recovered from the estate only one hundred dollars ? Suppose the case before put, that the man who has the temporary right to my horse, worth $200, sells him for $20, is the latter sum all that I can recover for him? No. The amount received by R. S. Todd has an important bearing, in many questions, between him or his heirs and the purchaser, but none whatever between him and the plaintiffs, whose land he has sold, and on whom he has inflicted this wrong. If a stranger sells my land it is a matter of no concern to me what he got for it. It binds me not at all. I have a right to my land. If the legislature prevents me from recovering the land itself, and says nothing, I have a right to its value from the wrong doer, and the court will not listen to his statement of what he got for it. What he has profited by the sale is not the matter in issue, but what I have been damaged by his misconduct.

These views seem to me equitable, and any inconsistent with them seem to me to work irremediable wrong to plaintiffs. I can see no justice in allowing the property of one wife's children to be taken to improve the condition of another wife's children. As a general rule, which I do not intend particularly

to apply here, for I have no knowledge on the subject, but generally step-children have a hard enough time of it without the courts taking part against them. Generally, it may be said, the children of the living wife will fare better from the bounty of the husband than the children of the dead one; and in finding out equality—which is equity—the court may rightly bring to their judicial investigations a knowledge of society, and the disposition of human nature. If the court shall be induced to cut out these first children, some of whom, at least, left their paternal roof in infancy, while the younger set filled their places, and deprive them of their property without just contribution from the others, it seems to me to work about as much hardship as often occurs, and that this court must do so with very great reluctance.

*George Robertson*, on the same side—

Presuming that there will be no doubt that the appellees are entitled to contribution for having discharged a burden imposed jointly on themselves and the appellants, as co-heirs of the warrantor, I will not discuss that matter, but will only add to what Mr. Kinkead says a supplemental suggestion as to the measure of relief.

Although the warrantee could have recovered from the heirs of R. S. Todd only the price paid to him with interest, yet when, by the estoppel provided by the statute, the appellants lost the land they inherited from their mother, and thereby discharged the appellants from their father's warranty, whatever they lost by that legal estoppel for the benefit of the appellants, the latter should restore to them on every principle of equitable contribution. That loss was the value of their maternal inheritance at the time of the loss of it, by the judgment of estoppel. What their father got for the land is immaterial. What did his warranty necessarily cost the appellants? This is the question. According to the law that

loss they could not avoid. Should not the justice of the same law divide that loss, *imposed by itself*, between them and the appellants, who were equally bound by the warranty which thus unavoidably occasioned that loss? If their father had got but one dollar, should his warranty take from the appellees $8,000, and the appellants, who ought to have contributed equally to satisfy that warranty, yet be liable for only fifty cents contribution? Or suppose the father had given the land to one of his children, and warranted the title, would the appellants, whom that warranty deprived of land descended to them from their mother, worth $8,000, get nothing from the appellants, equally privy to the warranty?

Judge SIMPSON, delivered the opinion of the court.　　　　June 25, 1857.

Robert S. Todd sold, in his lifetime, a tract of land in Fayette county, which belonged to his wife, who joined with him in executing the deed. As however the clerk's certificate of its acknowledgment by her was defective, her title to the land did not pass to the purchasers, but upon her death descended to her children and heirs at law. They, after the death of their father, brought an action for it against the purchasers, but failed to recover it on the ground that they had received assets by descent from their father to the full value of the land which he had sold and conveyed, and the title to which he had warranted to the purchasers. (*1st vol. Stat. law*, 110.)

Robert S. Todd had been twice married, and had children by each marriage. He died intestate. The land referred to belonged to his first wife, and her children having, as mentioned, failed to recover it from the purchasers, brought this action against the the personal representative and the other heirs of their father, and insist, that as they have lost the land by the warranty of their ancestor they should be indemnified out of his estate for the loss they have sustained, being the full value of the land, whereby the loss would devolve upon all, instead of a part of his heirs.

Their right to recover is denied upon the ground that they have been already indemnified out of the estate of their warranting ancestor for any loss they have sustained; and upon the further ground that the sale of the land was made at the instance and with the approbation of their mother, and the proceeds appropriated to the improvement of some ground in the city of Lexington, that belonged to her, of which they have received the exclusive benefit since their father's death.

The court below decided that the plaintiffs were entitled to the full value of the land thus sold and conveyed by their father, and rendered a judgment against his personal representative for that amount, after deducting therefrom the enhanced value of the ground in the city of Lexington, produced by the improvements which had been placed upon it by him in his lifetime. From that judgment the defendants have appealed to this court.

It is difficult to discover the precise principle upon which the plaintiffs' cause of action is based. If it be said that the plaintiffs, by the act of their father, have been deprived of a tract of land, to which they were entitled by descent from their mother, and therefore have a right to be remunerated out of his estate, to the extent of the loss they have thus sustained, the obvious answer is, that they have already received remuneration from his estate, and it was upon that ground alone that his warranty was available against them, and they were precluded from recovering the land which had been sold by him in his lifetime.

But it may be said that their ancestor's covenant of warranty has been satisfied exclusively out of their part of the estate, and as it was a general charge upon the whole estate, they have a right, in equity, to have it thus applied, and thereby distribute the loss ratably among all the heirs.

In answer to this view, it has been urged that the covenant of warranty has not been broken, conse-

quently no charge upon the estate has been created; and that there is no example in any of the books of an action like the present, although an occasion for it must frequently have arisen, especially between the heir and the executor, and therefore the inference is strong that there is no solid foundation for such an action to rest upon.

It is true that there has been no actual breach of the warranty, because it has been satisfied, and a breach prevented by operation of law, by the application of the assets in the hands of the heirs, in satisfaction of the covenant of their ancestor. This effect is produced by way of rebutter, and the principle upon which it is founded is the desire to prevent the circuity of action which would arise if the heirs, having assets by descent, were allowed to regain possession of the land, as they would immediately be obliged, by means of the covenant of warranty, to recompense the purchaser for the injury he had sustained by the eviction.

Looking then to the reason of the law, and the object it was designed to accomplish, it is evident that this defense allowed the purchaser, and which operated by way of rebutter, should in equity be regarded as a substantial breach of the warranty, and as a satisfaction thereof made by the plaintiffs. And as they have discharged a liability which by law was a charge upon the whole estate, they have a right to have it thus applied, so that the loss will devolve equally upon all the heirs. With respect to the argument drawn, from the absence in the books of any analogous cases, it is only necessary to remark, that the doctrine of the common law on the subject of warranty and of descents was of such a character as to prevent cases like the present from arising; and in nearly all of the other states in the union the ancestor's warranty, in cases like this one, does not have the effect of precluding a recovery of the land by the heirs of his wife, and consequently no such

Todd's Heirs
*vs.*
Todd's Heirs.

1. The ancestor sold land the inheritance of the wife, she uniting in the deed, but her acknowledgment being ineffectual to pass the inheritance, after her death the children of the wife sued for the land, but failing to recover,on the ground that they had received estate of the father by descent equal to the value of the land, this suit is brought against the administrator of the father and his children by a second wife to recover the value of the land. Held, that the plaintiffs had a right to recover the value of the land sold, at the time it was conveyed by their father,out of his entire estate,with interest from the death of the father.

2. But if the value of the land sold, or part thereof,was used by the father in increasing the value of other lands which had descended to the plaintiffs, whereby they received the benefit of the proceeds of the land sold by the father, such out-

question as the one here presented can arise in those states.

The extent of the plaintiff's right, however, under their ancestor's covenant of warranty, cannot exceed the amount of the liability which was imposed on his estate by a breach of it. The value of the land at the time of the sale, and not at the time of the eviction, is the amount of that liability. That value, with interest thereon from the death of their father, is all that the plaintiffs have a right to, as they were not entitled to the possession of the land until that time. Their right of action is founded alone upon the warranty of their ancestor; it cannot be maintained upon any other ground, and consequently the right of recovery upon a breach of the warranty regulates and determines the extent of the relief to which they are entitled.

It is not necessary to decide, in this action, what amount of assets is required by the statute to bar a recovery by the heir; it may however be remarked, that by the common law the value of the land at the time it was conveyed was the criterion of the damages to which the vendee was entitled for a breach of the warranty; our law fixes the same criterion; and as the statute does not specify the value of the heritage that must descend to the demandant, in order to create the bar, it would seem that it would have to be determined by reference to the law regulating the liability of the warrantor.

The proof shows that the land in question was sold with the assent of the plaintiffs' mother, for the purpose of improving the lot of ground which she owned in the city of Lexington; that a sum exceeding the proceeds of the sale was thus applied by her husband, and that the plaintiffs have received the benefit of this expenditure. So far, therefore, as the value of the lot was enhanced by these improvements, they were properly charged with such enhanced value, as an advancement, or if it cannot be regarded as an advancement, they should in equity account for it in

the adjustment of their present demand against the estate.

The objections made to the decisions of the court below, on the subject of the advancements made to some of the plaintiffs by the intestate, cannot be sustained. The gift of the land to the grand daughter was not an advancement to her mother. The answer of Levi Todd denies the reception of the rents of the house and lot in Lexington, otherwise than as the agent of his father, and states that they were all paid to him. He also denies that his father made any advances to him in money, although he admits that he loaned him money, which he alledges he afterwards repaid him. On this answer he should not, in our opinion, be charged either with the rents or the money loaned. He denies that he received either the rents or the money as advancements. The other matters stated by him were merely explanatory, and all his statements in relation to them should be taken together. There was no attempt to charge him with these sums as debts, or otherwise than as advancements, and he is not chargeable with them as such upon the statements in his answer.

But as the court below allowed the plaintiffs a larger sum than they were entitled to, the judgment is erroneous, and must for this reason be reversed.

Wherefore, the judgment is reversed, and cause remanded for further proceedings and judgment in conformity with this opinion.